**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 14 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JERRY ORREN, | No.   21-35006 |
| Plaintiff-Appellant, | D.C. No.<br>3:19-cv-02080-BR |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Hon. Anna Brown, District Judge, Presiding

Submitted December 9, 2021**
San Francisco, California

Before:  MURGUIA, Chief Judge, IKUTA, and VANDYKE, Circuit Judges.

Jerry Orren appeals the district court's denial of an application for supplemental social security income and disability insurance benefits under Title XVI of the Social Security Act.  "We review a district court's judgment upholding the denial of social security benefits de novo" and "set aside a denial of benefits only

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

if it is not supported by substantial evidence or is based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (citations omitted). We have jurisdiction under 28 U.S.C. § 1291, and affirm.

To establish a disability for purposes of the Social Security Act, a claimant must prove that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "In order to determine whether a claimant meets this definition, the ALJ employs a five-step sequential evaluation." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citations omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

In this case, at step five[1] the ALJ found Orren was not disabled because he was capable of performing jobs in the national economy such as mail clerk, office helper, or parking attendant. The ALJ discounted Orren's testimony that he cannot stand for longer periods of time, cannot walk for more than five minutes, cannot sit because his back often hurts, and that his knees often give out and dislocate. Similarly, the ALJ discounted the medical opinion of Dr. Clinton, Orren's treating physician, which stated that Orren could stand for only five minutes at a time, could only sit for fifteen minutes at a time, could sit for a total of less than two hours in a

---

[1] The ALJ also addressed Orren's carpal tunnel syndrome symptoms at step 3, finding that after surgery Orren was able to use his hands effectively.

2

workday, could stand for a total of less than two hours in a workday, and could balance only occasionally on his own.

We cannot say the district court erred in affirming the ALJ. The ALJ provided "specific, clear and convincing reasons" to reject Orren's testimony about the severity of his symptoms. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). And the ALJ provided "clear and convincing" reasons to reject Dr. Clinton's opinion, which was contradicted by agency doctors. *See Baxter v. Sullivan*, 923 F.2d 1291, 1396 (9th Cir. 1991). We affirm for the following reasons.

*First*, both Orren's symptom testimony and Dr. Clinton's medical opinion conflicted with objective medical evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). For example, Orren testified about his inability to stand and walk for longer periods due to knees that "give out and dislocate." But his October 2017 X-rays were normal and showed no signs of dislocation. And during an October 2017 examination with Dr. Clinton, despite Orren complaining of some knee pain, his knees exhibited a normal range of motion with no instability.

Orren also testified about his inability to stand, walk, or sit for long periods due to a back that "hurts all the time" and hip pain. But his back exhibited full strength and normal reflexes with only minor pain during a follow-up appointment with Dr. Clinton, and X-rays of his back in 2015 and 2017 showed only mild to moderate degenerative disc disease. Likewise, August 2018 X-rays of Orren's hips

and feet showed no evidence of abnormalities. The ALJ reasonably relied on this evidence in discounting both Orren's symptom testimony and Dr. Clinton's medical opinion.

As for Dr. Clinton, her own physical examination notes and diagnostic imaging contradicted the medical opinion she provided the agency. In October 2017, Dr. Clinton recorded no abnormalities in Orren's knees and back, instead recording that he exhibited a normal range of motion, strength, reflexes, and stability despite Orren's complaints of pain. Diagnostic imaging in October 2017 also showed normal knees and only moderate degenerative changes to Orren's lumbar, spine, and hips. The ALJ reasonably relied on this evidence in discounting Dr. Clinton's medical opinion.

The ALJ's decision to discount Dr. Clinton's opinion was supported by other evidence in the record. In October 2017 Dr. Clinton advised Orren to lose weight and "get back to walking" to improve his knee and back pain. And in April 2018—a mere five months before her agency opinion—Dr. Clinton advised Orren to "do gardening and walk for exercise." Despite her different views for the agency opinion in August 2018, Dr. Clinton conducted no full examinations of Orren after October 2017 and relied on no new diagnostic imaging to justify the extreme limitations in activity she later endorsed.[2]

---

[2] An MRI in September 2018 showed negative change in Orren's knees, but that scan occurred after Dr. Clinton provided her opinion.

4

Each of these facts supports the ALJ's decision to give both Orren's testimony and Dr. Clinton's opinion little weight and determine that objective medical evidence did not support the extreme degree of standing and walking restrictions they proposed.[3]

*Second*, in addition to the contradictory evidence outlined above, Dr. Clinton's medical opinion was contradicted by the opinions of agency doctors. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Drs. Kehrli and Basham, non-examining agency physicians, concluded that Orren could perform light work. Although these physicians only reviewed the medical records, their conclusion can serve as a "legitimate reason for rejecting a treating or examining physician's opinion … when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citation omitted). The ALJ gave greater weight to the opinions of Drs. Kehrli and Basham because they based their opinions on the objective medical evidence in Orren's record, whereas Dr. Clinton based her opinion primarily upon Orren's complaints of pain. And Drs. Kehrli and Basham's conclusions are consistent with Dr. Clinton's observations and examinations of Orren. These are specific, clear, and convincing reasons to discount Dr. Clinton's

---

[3] Orren also argues the ALJ erred by discounting his need to use a cane. But Orren does not indicate that a cane was prescribed or objectively medically necessary and evidence of his daily activities undermines his position. On this point too, the ALJ did not err. *See Thomas v. Barnhart*, 278 F.3d 947, 959–60 (9th Cir. 2002).

opinion in favor of the agency doctors' opinions. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).

*Third*, substantial evidence supported the ALJ's determination that Orren's testimony and Dr. Clinton's medical opinion were undermined by objective evidence that Orren's back and knee conditions improved with conservative treatment. *Ford*, 950 F.3d at 1153; *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007). The evidence shows that Orren exhibited a favorable response to conservative treatments for back pain and knee pain, which contrasts with both Orren's testimony and Dr. Clinton's medical opinion requesting extreme accommodations that "limited [Orren] to work at less than sedentary exertional level." Orren started physical therapy for back and knee pain in January 2018. The physical therapist recorded improvements in Orren's activity tolerance and noted that Orren was walking consistently. Likewise, Orren's carpal-tunnel syndrome symptoms improved after occupational therapy and previous surgeries, also undermining Orren's testimony. These results were consistent with Dr. Clinton's earlier recommendations of conservative treatment options. Therefore, the ALJ's decision to discount Dr. Clinton's opinion was supported by other evidence in the record.

A favorable response to treatment and inconsistent reporting of symptoms are clear and convincing reasons for the ALJ to properly discount Orren's testimony. *Tommasetti*, 533 F.3d at 1039–40. Likewise, a favorable response to treatment that

6

contradicts Dr. Clinton's medical opinion is a clear and convincing reason to discount her testimony. *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). The ALJ reasonably relied on these factors to discount Orren's testimony and Dr. Clinton's opinion.

*Fourth*, substantial evidence supported the ALJ's determination that objective evidence of Orren's daily activities also undermined both Orren's description of his symptoms' prohibitive effect on his abilities and Dr. Clinton's medical opinion. *See Rollins*, 261 F.3d at 856–57; *see also Ford*, 950 F.3d at 1155

The ALJ reasonably concluded that "[Orren] is able to function quite well," because Orren often sat for long periods of time when watching television and playing board games. The record established that Orren also spends up to an hour every day preparing his meals, and another hour completing household chores like making his bed, doing laundry, and washing dishes. Additionally, Orren leaves his home multiple times a week to shop for groceries, attend church, and drive his car. This conflicted with Orren's testimony that he cannot sit, or stand, for longer periods of time. These activities provided a specific, clear, and convincing reason to reject the extreme limitations indicated by Orren and Dr. Clinton. *See Rollins*, 261 F.3d at 856–57.

## CONCLUSION

For the reasons expressed herein, we determine that the ALJ's decision is free from harmful error and supported by substantial evidence. Accordingly, we

7

**AFFIRM** the district court and **DENY** Orren's request for an immediate award of

disability benefits.